UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK MAYES,<br><br>               Plaintiff,<br><br>     v.<br><br>ANGIE RAYFIELD, *et al.*,<br><br>               Defendants. | CASE NO. C18-0700-RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

This matter comes before the Court on Defendant Service Employees International Union 6's Motion for Summary Judgment against pro se Plaintiff Mark Mayes. Plaintiff filed suit alleging discrimination on the basis of race under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e) ("Title VII") and 42 U.S.C. § 1981. Plaintiff also appears to allege breach of duty of fair representation. Having reviewed Defendant's Motion, Plaintiff's Response, and all documents submitted in support thereof, the Court GRANTS Defendant's Motion for Summary Judgment.

## II. BACKGROUND

Defendant Service Employees International Union 6 ("the Union") is a labor organization that serves as the exclusive bargaining representative for janitorial workers employed by ABM janitorial services ("ABM"). Dkt. #39 at ¶ 3-5. The King County Master Labor Agreement ("the CBA") is the collective bargaining agreement between the Union and North American Property Services, of which ABM is an employer member. Dkt. #40 at ¶ 5-6. The CBA sets forth a procedure for grievances and arbitrations under Article 18 and states that any disciplinary actions, such as termination of employment, may be appealed through the grievance process. Dkt. #40 at 48-50. However, Article 12.1 clarifies that new employees may not challenge their termination through the grievance procedure: "During the first five hundred and twenty (520) hours worked for the Employer, any employee may be discharged without cause or prior notice and without recourse to the grievance procedure." *Id.* at 38.

Mr. Mayes worked as a janitor for ABM from September 2017 through October 2017, working a total of 246 hours over the course of his employment. Dkt. #39 at 6. Mr. Mayes was therefore a probationary employee at the time of his termination, having worked less than the 520 hours required under Article 12.1 of the CBA to challenge his termination through the grievance process. Mr. Mayes claims that during his employment at ABM, he faced at least four instances of racial discrimination, including being called the N-word, a manager's racially-charged comment about a rope, and an assault he believes was racially motivated. Dkt. #38 at 15-18. Mr. Mayes states that he complained to ABM management at least four times and requested that management notify the Union. Dkt. *Id.* at 15-19. Neither Mr. Mayes nor ABM's management informed the Union of these complaints prior to his termination. Dkt. #39 at ¶ 7.

On December 29, 2017, after Mr. Mayes' termination from ABM, he contacted the Union to discuss his claims. Dkt. #39 at ¶ 8. Mr. Mayes spoke with Angie Rayfield, an organizer for

the Union, and stated that ABM terminated him after he reported discrimination and harassment. Based on this conversation, Ms. Rayfield contacted Heather Musgrove, the human resources manager for ABM, to discuss Mr. Mayes' claims and the circumstances of his termination. Dkt. #40 at 60-61. Ms. Rayfield learned that ABM had terminated Mr. Mayes for a fight that occurred on the employer's premises and that he was still on probation when he was terminated. Dkt. #39 at ¶¶ 9-10.

On January 3, 2018, Ms. Rayfield contacted Mr. Mayes to explain that the Union could not bring a grievance on his behalf because of the probationary provision under Article 12.1 of the CBA. Dkt. #40 at ¶¶ 11-12. Ms. Rayfield informed Mr. Mayes of this limitation for the second time on or about January 11, 2018, when he called again to discuss his claims. *Id.* at ¶¶ 13-14. However, Ms. Rayfield suggested other courses of action for Mr. Mayes, including filing a complaint against ABM with the Equal Employment Opportunity Commission ("EEOC") or the Office of Civil Rights. *Id.* at ¶ 14. Mr. Mayes acknowledged that Ms. Rayfield had informed him about a CBA provision that dealt with probationary employees. Dkt. #38 at 9.

After speaking with Ms. Rayfield on January 11, 2018, Mr. Mayes lodged a complaint with the EEOC alleging discrimination and harassment while employed at ABM. *Id.* at ¶ 14. The EEOC dismissed Mr. Mayes' charge and provided him a right to sue letter. Dkt. #36 at ¶ 10. Mr. Mayes also filed a complaint against ABM for discrimination that was mediated by the EEOC, which resulted in a settlement with ABM. Dkt. #38 at 6-8. On April 9, 2018, Mr. Mayes filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") against the Union for failure to process his grievance. Dkt. #36 at ¶ 11. After investigating Mr. Mayes' claims, the NLRB dismissed Mr. Mayes' charge on June 14, 2018 finding "insufficient evidence to establish that the Union unlawfully failed to represent you by not filing a grievance over your charge." Dkt. #39 at 15. The NLRB cited Article 12.1 of the collective bargaining agreement

and explained that because Mr. Mayes was discharged before he had worked 520 hours, he was ineligible to participate in the Union's grievance and arbitration process. *Id.*

Mr. Mayes, proceeding pro se, filed this action against the Union and Ms. Rayfield in the U.S. District Court for the Western District of Washington on May 15, 2018. Dkt. #1. After the Court granted two motions to dismiss Plaintiff's claims for failure to state a claim, *see* Dkts. #19, #30, Mr. Mayes filed a Third Amended Complaint on April 19, 2019 claiming violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. §1981. Dkt. #31 at 1. His complaint also appears to allege that the Union breached its duty of fair representation for failure to file a grievance on his behalf. *Id.* at 5-6. Although Plaintiff's Third Amended Complaint appears to allege individual claims against Ms. Rayfield for violations of Title VII, *see* Dkt. #31 at 1-2, the Court previously dismissed these claims with prejudice. Dkt. #30 at 5.

Defendant Union moved for summary judgment on October 15, 2019 on the basis that Article 12.1 of the CBA prevented it from pursuing a grievance for Mr. Mayes' termination given his probationary status. Dkt. #37. Mr. Mayes has filed a document titled "Declaration Supporting Verdict" that the Court interprets as a Response. Dkt. #43. Mr. Mayes also filed two surreplies, Dkts. #46, #47, but provided no notice to the Court as required by this district's Local Rules. *See* Local Rules W.D. Wash. LCR 7(g)(1). Mr. Mayes has also filed a cross-motion for summary judgment on his claims. Dkt. #36.

### III. DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, (1986). Material facts are those which might affect the outcome of the suit under governing law. *Id.* at 248. In ruling on

summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.,* 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy,* 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers,* 969 F.2d at 747, *rev'd on other grounds,* 512 U.S. 79 (1994). However, the non-moving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

**B. Discrimination Claims**

The Court finds that Mr. Mayes' discrimination claims fail as a matter of law. Under Section 703(c)(1) of Title VII, it is "an unlawful employment practice for a labor organization . . . to discriminate against[ ] any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(c)(1). A union violates Title VII if it deliberately declines to pursue a member's claim because of the member's race. *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 882 (9th Cir. 2007) (citing *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 671–74 (9th Cir. 1988)). The same legal principles that apply in a Title VII dispute "apply with equal force in a § 1981 action." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 686 (9th Cir. 2017).

In Title VII and Section 1981 actions against labor unions, Courts apply the *McDonnell Douglas* burden-shifting framework. *Beck*, 506 F.3d at 882 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). Under the *McDonnel Douglas* framework, a union member

establishes a prima facie claim of discrimination if he introduces evidence that he "was singled out and treated less favorably than others similarly situated on account of race or any other criterion impermissible under the statute." *Gay v. Waiters' & Dairy Lunchmen's Union,* 694 F.2d 531, 537 (9th Cir. 1982). A showing of disparate treatment raises an inference of discrimination "because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 579–80 (1978).

If the plaintiff establishes a prima facie case of discrimination against the union, the burden shifts to the union to articulate a legitimate, non-discriminatory reason for the less favorable treatment. *Beck*, 506 F.3d at 883. The union must provide "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the . . . action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993). Once the defendant produces sufficient evidence to satisfy this burden, the burden shifts back to the plaintiff to persuade the trier of fact that he has been the victim of intentional discrimination. *Beck*, 506 F.3d at 883.

Here, Mr. Mayes has provided no evidence to establish a prima facie case of discrimination. He has failed to introduce any evidence to show that the Union singled him out or treated him less favorably than a similarly-situated probationary union member. However, Mr. Mayes maintains that no such evidence is necessary and claims that "[t]he only evidence needed to show discrimination is the company not taking action in the face of discrimination." Dkt. #43 at 2. He also references his alleged harassment by ABM's management and claims that the Union did nothing to investigate his complaint. Dkt. #46 at 2-4. However, it is undisputed that the Union had no knowledge of Mr. Mayes' desire to use the Union's grievance process until he contacted Ms. Rayfield in December 2017—nearly two months after his termination. Dkt. #40 at ¶¶ 7-8;

Dkt. #39 at ¶ 9. Based on Mr. Mayes' unsupported allegations, no reasonable trier of fact could draw an inference of discriminatory intent from the Union's decision to not pursue Mr. Mayes' grievance.

Even if Mr. Mayes could establish a prima facie case of discrimination, Defendants have provided a legitimate reason for not pursuing his grievance. There is no material dispute of fact that the CBA prevents the Union from filing grievances on behalf of probationary employees. *See* Dkt. #40 at 38 ("During the first five hundred and twenty (520) hours worked for the Employer, any employee may be discharged without cause or prior notice and without recourse to the grievance procedure.") There is likewise no material dispute of fact that Plaintiff was a probationary employee at ABM at the time of his termination. Dkt. #39 at 6.

In his Response and surreply, Mr. Mayes invokes *Goodman v. Lukens* to argue that the Union discriminated against him by failing to file a grievance on his behalf against ABM. Dkts. #43 at 1; #47 at 1 (citing 42 U.S. 656, 659 (1987)). He quotes, in part: "The District Court concluded that the Unions were also guilty of discriminatory practices, specifically in failing to challenge discriminatory discharges of probationary employees, failing and refusing to assert instances of racial discrimination as grievances, and in tolerating and tacitly encouraging racial harassment." Dkt. #47 at 1 (citing *Goodman*, 42 U.S. at 659–60). *Goodman* is inapposite here, given that the case addressed a union policy of "rejecting disparate-treatment grievances presented by blacks solely because the claims assert racial bias and would be very troublesome to process." *Goodman*, 42 U.S. at 669. Here, Mr. Mayes has produced no evidence that the Union pursued or currently pursues a policy of rejecting disparate-treatment grievances. On the contrary, the undisputed facts show that the Union declined to pursue his grievance because of Mr. Mayes' probationary status, as required by Article 12.1 of the CBA.

Accordingly, the Court finds that Mr. Mayes' discrimination claims under Title VII and 42 U.S.C. § 1981 fail as a matter of law.

**C. Breach of Duty of Fair Representation**

The Court also finds that as a matter of law, the Union did not breach its duty of fair representation to Mr. Mayes. As the exclusive bargaining representative for its union employees, a labor organization owes its members a duty of fair representation. *Beck*, 506 F.3d at 879 ("[I]t must be the duty of the representative organization to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'") (quoting *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164 n.14 (1983)).

To show that a union breached its duty of fair representation, a plaintiff must demonstrate that the union's conduct towards a member was "arbitrary, discriminatory, or in bad faith." *Vaca v. Snipes*, 386 U.S. 171, 190 (1967). Arbitrary conduct is defined as union conduct that is "irrational" and "without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 46 (1998). In concluding that union conduct breached the duty of fair representation, a court must find "either that the union conduct at issue is a discriminatory or bad faith exercise of judgment, or is an arbitrary (meaning wholly irrational, inexplicable, or unintentional) action that substantially injured an employee." *Beck*, 506 F.3d at 880.

Here, Mr. Mayes does not claim that the Union breached the terms of its CBA or otherwise acted irrationally or arbitrarily. Rather, he appears to challenge the legality of Article 12.1 for excluding probationary employees from using the grievance procedure to challenge their terminations. *See* Dkt. #36 at 1 ("Here it states an employer can discharge an employee for any reason. This is unlawful practice!"). However, unions are not legally required to pursue their members' grievances. *See Evangelista v. Inlandboatmen's Union of Pac.,* 777 F.2d 1390, 1395

(9th Cir. 1985) ("[A]n employee has no absolute right to have his grievance taken to arbitration, and the union may reject unmeritorious grievances at the first step in the contractual procedure."). Contrary to Mr. Mayes' argument, unions are afforded "substantial discretion" to decide whether and to what extent to pursue a particular grievance. *Vegas v. United Steelworkers,* Local 12-591, 73 F. Supp.3d 1260, 1269 (2014) (*citing Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270, 1273 (9th Cir. 1983)).

This discretion allows a union to exclude probationary employees from using the union's grievance procedure to process their termination disputes. Contract provisions that treat probationary employees differently from non-probationary employees in terms of accessing a union's grievance procedures do not breach a union's duty of fair representation. *Van Leeuwen v. U.S. Postal Serv.*, 628 F.2d 1093, 1097 (8th Cir. 1980) (Upholding CBA provision that precluded member employees from challenging termination through union's grievance process for first ninety days of employment). Consequently, unions commonly use provisions like Article 12.1 in their CBAs to limit access to grievance procedures until employees have worked a certain length of time at the company. *See, e.g.*, *Trumbauer v. Grp. Health Co-op. of Puget Sound*, 635 F. Supp. 543, 545 (W.D. Wash. 1986) (Provision allows discharge of member employees without recourse to grievance procedure for first three months of employment); *see also Hollins v. Kaiser Found. Hosps.*, 727 F.2d 823, 825 (9th Cir. 1984) (same).

Accordingly, the Court finds that Mr. Mayes' breach of duty of fair representation claim fails as a matter of law.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

(1) Defendant's Motion for Summary Judgment, Dkt. #37, is GRANTED. All of Plaintiff's claims are DISMISSED.

(2) All pending Motions in this case are STRICKEN.

(3) This case is CLOSED.

DATED this 2 day of December 2019.

_____
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE